WILSON BROTHERS, A CO-PARTNERSHIP; AND BONEY WILSON & SON, INC., A NORTH CAROLINA CORPORATION v. MOBIL OIL, A FOREIGN CORPORATION; MOBIL CHEMICAL CORPORATION, A FOREIGN CORPORATION; MILLER BUILDING CORPORATION, A NORTH CAROLINA CORPORATION; GRAVES ELECTRIC CORPORATION; AND MOBIL OIL CORPORATION, A FOREIGN CORPORATION

No. 825SC789

(Filed 19 July 1983)

1. **Negligence § 29— sufficiency of evidence against company alleged to have installed wires**

   The plaintiffs presented sufficient evidence to create an issue as to whether defendant Graves installed the wiring that caused a fire in plaintiffs' store, and plaintiffs' evidence was sufficient to raise a question as to whether defendant Graves was negligent in installation of the wires.

2. **Master and Servant § 22; Negligence § 29— sufficiency of evidence of contractor-subcontractor relationship in negligence action**

   There was a conflict in the evidence over the relationship between a contractor, defendant Miller, and an electrical subcontractor, defendant Graves, which created an issue of fact over a possible relationship which could result in holding defendant Miller liable for the alleged negligence of defendant Graves.

3. **Negligence § 30; Sales § 22.2— manufacture of material burned in fire —insufficient evidence of negligence**

   The trial court properly granted summary judgment in favor of defendant Mobil, who manufactured plastic trays burned in plaintiffs' store, since the fact that Mobil's plastic trays burned when molten metal dripped on them did not make them so dangerous as to require a warning about their use.

APPEAL by plaintiffs from *Rouse, Judge.* Judgment entered 8 and 12 March 1982 in Superior Court, PENDER County. Heard in the Court of Appeals 17 May 1983.

This is an action to recover damages caused by a fire which occurred at the plaintiffs' retail food supermarket on 18 December 1977 in Burgaw. The plaintiffs allege that defendant Miller Building Corporation was negligent in construction and remodeling of the premises and failed to supervise and inspect installation of electrical wiring by defendant Graves Electric Corporation and that defendant Graves was acting as Miller's agent and employee.

The plaintiff further alleged that Graves negligently installed electrical wiring which caused the combustion of plastic packaging material negligently manufactured, sold, and distributed by

Mobil Oil Corporation. Mobil Chemical Corporation, a subsidiary of Mobil Oil, is alleged to have negligently manufactured the chemical components of the packaging material.

The complaint also included a strict liability claim against the Mobil defendants, a breach of the warranty of merchantability claim against Miller Building and Graves Electric, and a claim for $1,000,000 in punitive damages against the Mobil defendants for failure to warn of the risk of fire associated with the plastic packaging material. Actual damages were alleged to have exceeded $1,000,000.

It is undisputed that the fire was caused by the failure of certain electrical wiring in the storage area above the plaintiff's meat cutting room. Sam Berkowitz, a professional engineer, said in a deposition that wires inside the metal conduit were exposed due to the conductor insulation being stretched during installation and eventually breaking down. The electrical failure caused arcing, which melted a hole in the conduit pipe. Hot, molten metal dripped down onto the plastic materials, which ignited and caused the fire.

The plaintiffs presented affidavits of three people with personal knowledge of the installation of electrical work during a 1972 addition to the store. All three said that in their best recollection, Graves Electric installed electrical conduit in the area in which the fire started. Graves denies that it did any work in that area of the store.

Evidence presented by the plaintiffs showed that plastic packaging material was stored below the conduit that melted down, that it would ignite under facts alleged by the plaintiffs, and that there was no warning or instructions for proper storage on the material. The Mobil defendants point to the deposition of Charles Tiderman, an employee at the plaintiffs' Burgaw store, as contrary evidence. Tiderman said that the packaging materials were not in the room where the fire started when it allegedly started and that he does not consider the material hazardous.

The defendants also emphasize the deposition of Burgaw Fire Chief John Frazier. Frazier testified that the fire department would have been able to get to the fire quicker if the plaintiffs' storeroom was not full of goods. An affidavit of professional

engineer Wayne Carson stated that the crowded storage conditions in the storeroom at the time of the fire were in violation of the Fire Prevention Code, upon which the Burgaw fire ordinances were based.

After consideration of oral arguments by the parties and the evidence before him, the trial judge entered summary judgment in favor of all defendants. From that judgment, the plaintiffs appealed.

*Moore & Biberstein, by R. V. Biberstein, Jr., and Lommen, Nelson, Sullivan & Cold, by John P. Lommen and Daniel J. Buivid, Jr., for the plaintiff-appellants.*

*Hogue, Hill, Jones, Nash & Lynch, by David A. Nash, and Carr, Abney, Tabb & Schultz, by W. Pitts Carr and David H. Pope, for the Mobil defendant-appellees.*

*Crossley & Johnson, by Robert W. Johnson, for defendant-appellee Graves Electric Corporation.*

*Marshall, Williams, Gorham & Brawley, by Lonnie B. Williams, for the defendant-appellee Miller Building Corporation.*

ARNOLD, Judge.

Summary judgment under G.S. 1A-1, Rule 56(c) is proper when there is "no genuine issue as to any material fact. . . ." It is a "drastic remedy . . . [that] must be used with due regard to its purposes and a cautious observance of its requirements in order that no person shall be deprived of a trial on a genuine disputed factual issue." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E. 2d 823, 830 (1971). This remedy "does not authorize the court to *decide* an issue of fact. It authorizes the court to determine whether a genuine issue of fact exists." *Vassey v. Burch*, 301 N.C. 68, 72, 269 S.E. 2d 137, 140 (1980) (emphasis in original). Summary judgment should be denied "[i]f different material conclusions can be drawn from the evidence." *Spector Credit Union v. Smith*, 45 N.C. App. 432, 437, 263 S.E. 2d 319, 322 (1980).

In *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897, *reh'g denied*, 281 N.C. 516, --- S.E. 2d --- (1972), the court defined two terms that are determinative on a summary judgment question.

An issue is *material* if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. The issue is denominated "*genuine* if it may be maintained by substantial evidence."

280 N.C. at 518, 186 S.E. 2d at 901 (emphasis added). To grant summary judgment, a court must find "that on the undisputed aspects of the opposing evidential forecasts the party given judgment is entitled to it as a matter of law." 2 McIntosh, N.C. Practice and Procedure § 1660.5 (2d ed., Phillips Supp. 1970). *See also,* W. Shuford, N.C. Civil Practice and Procedure § 56-7 (2d ed. 1981). In ruling on a summary judgment motion, the record should be viewed in the light most favorable to the party opposing the motion. *Brice v. Moore,* 30 N.C. App. 365, 367, 226 S.E. 2d 882, 883 (1976).

It is an accepted tenet of our jurisprudence that summary judgment is rarely proper in negligence cases. "Even where there is no dispute as to the essential facts, where reasonable people could differ with respect to whether a party acted with reasonable care, it ordinarily remains the province of the jury to apply the reasonable person standard." *Moore v. Crumpton,* 306 N.C. 618, 624, 295 S.E. 2d 436, 441 (1982). But where there is no genuine issue of material fact and reasonable men could only conclude that the defendant was not negligent, entry of summary judgment is proper. *Dendy v. Watkins,* 288 N.C. 447, 455, 219 S.E. 214, 219 (1975).

We now consider the defendants separately.

### GRAVES ELECTRIC

[1]  The plaintiffs contend that there is a fact issue as to whether Graves installed the wiring that caused the fire. Graves denies that it installed the wiring in question. It contends that its material lists did not show any of the type of conduit which caused the fire and that it was not the electrical contractor when the building was built in 1965. The conduit which caused the fire was connected to panels that were installed in 1965.

The plaintiffs' evidence raises a fact issue on this point. They submitted affidavits of three people who were plaintiff's em-

ployees in 1972. All three stated that their "best recollection" was that Graves installed the conduit which caused the fire.

Graves attacks these affidavits as insufficient under G.S. 1A-1, Rule 56(e). That rule states in part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

The requirements of the rule were met here.

The affidavits were based on personal knowledge. The phrase "best recollection" is equivalent to the phrase "to the best of my knowledge" that was held to be on personal knowledge in *Faulk v. Dellinger*, 44 N.C. App. 39, 259 S.E. 2d 782 (1979). As *Faulk* commented, "[I]n the case at hand, we do not have a situation of manufactured fact but merely a self-imposed limitation to the affiant's personal knowledge which is all the rule requires." 44 N.C. App. at 42, 259 S.E. 2d at 784. The affiants were competent to testify on what they stated in their affidavits.

Although there is a fact issue as to whether Graves installed the conduit in question, it must also be shown that there is a fact issue as to Graves' negligence for the plaintiff's case to survive a summary judgment motion.

Graves argues that offering Berkowitz's testimony about how the fire started, when his conclusions were based on photographs of the conduit after the fire, was not sufficient. It contends that because his testimony was not based on a personal examination of the burned conduit, he was not speaking from personal knowledge and thus, was not competent to testify. We reject these arguments.

It should first be remembered that there is a presumption against granting summary judgment in negligence cases. It is a jury question if a defendant met the reasonable man standard. *See, e.g., Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979).

The pertinent portion of Berkowitz's deposition is as follows:

Q. . . . do you have any explanation for why it [the conduit] arced at this particular time?

A. . . . I have seen cables that will be pulled into a conduit and will be damaged and will sit there for years until the insulation finally breaks down. . . . It may not fail immediately. It may sit there for a period of years under a condition of tension and then ultimately break down.

Also, because of the localized nature of this arcing, I have the feeling that that cable was bent while it was being pulled in. That is, that it had a crimp in it and that this ultimately broke down.

Q. You are saying that the insulating material was under tension while it was there in the conduit?

A. That is correct.

Q. Which would cause it to break down in one particular point?

A. That is correct.

Q. Where it had a crimp; is that correct?

A. That is correct.

Q. Is that all theory? Do you have any facts to support that?

A. I didn't have the conduit itself or the cable. What I am going by is my own experience in having found cable under that condition that did fail as a consequence of that, of that kind of condition.

Q. Now, assuming that this point in the conduit which has the hole in it was caused by arcing of the nature that you have described, do you have an opinion as to how the heat spread from that point and started a fire?

A. Yes, sir, the molten metal and the sparks falling from the arc point would have fallen into combustible material that was stored beneath it.

This testimony raises questions of whether Graves was negligent in installation and if such negligence could have caused

the fire. Although Berkowitz did not personally examine the conduit in question, his opinion was based on a personal examination of the burned building, photographs of the melted conduit, and his experience in other cases, and was therefore competent to testify as to the cause of the fire.

### MILLER BUILDING CORPORATION

[2] The plaintiffs argue that there is a fact issue on whether an employer-employee or contractor-subcontractor relationship existed between Miller and Graves so as to make Miller liable for any possible negligence of Graves. We agree.

The law in North Carolina on the relationship between master and servant was outlined in *Hayes v. Elon College*, 224 N.C. 11, 29 S.E. 2d 137 (1944). The Supreme Court found the vital test to be if "the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." *Id.* at 15, 29 S.E. 2d at 140. *Hayes* enunciated a number of elements to consider in the determination.

> The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Id.* at 16, 29 S.E. 2d at 140. These factors are considered along with all other circumstances to determine the relationship.

The facts here show a possible relationship which could result in holding Miller liable for the alleged negligence of Graves. An affidavit of J. A. Kuske, Miller's Vice-President, states the following contentions:

> 1. Wilsons took separate bids from general contractors and from electrical, plumbing, heating, and air conditioning contractors.

2. Graves did all of the electrical installation in connection with the 1972 project, as far as Miller knows. None of the electrical work was done by Miller or at its request.

3. Miller exercised no control over Graves in the 1972 installation.

4. Miller included the bids of all contractors in one contract as a matter of convenience at the plaintiffs' request.

An affidavit of Lawrence Allan Wilson, a partner in the plaintiffs' business, however, contradicts Kuske's assertions. Wilson states in his affidavit: "The electrical subcontractor for Miller Building Corporation was Graves Electric Company. Wilson Brothers did not contract separately with Graves Electric Company for the electrical work. The contract with Miller Building Corporation included the electrical work."

This conflict in the evidence over the relationship between Miller and Graves creates an issue of fact that must be decided by a jury. We express no opinion on the alleged negligence of Graves or Miller's responsibility for it. We only decide that summary judgment was improperly entered for Miller.

### THE MOBIL DEFENDANTS

[3] The plaintiffs argue that the Mobil defendants should be strictly liable in tort because the plastic trays which they manufactured and sold were unreasonably dangerous. They contend that RESTATEMENT (SECOND) OF TORTS § 402A (1965), which extends strict liability to sellers in products liability cases, should be adopted in North Carolina.

We note first that the Supreme Court rejected the same argument recently in *Smith v. Fiber Controls Co.*, 300 N.C. 669, 268 S.E. 2d 504 (1980). In this State, a plaintiff's claim in a products liability case must be determined by the principles of negligence or breach of warranty. *Maybank v. S. S. Kresge Co.*, 46 N.C. App. 687, 689, 266 S.E. 2d 409, 411 (1980), *modified and aff'd*, 302 N.C. 129, 273 S.E. 2d 681 (1981).

G.S. 99B, the North Carolina Products Liability Act, is not an enactment of strict liability in products liability cases. In fact, G.S. 99B-4(3) reaffirms the applicability of contributory negligence

as a defense in product liability actions. Contributory negligence
is not a defense in a strict liability action.

The plaintiffs also contend that the Mobil defendants may be
liable in negligence for failure to warn of the dangers of the
plastic trays. We find this argument to be feckless.

The fact that Mobil's plastic trays burned when molten metal
dripped on them does not make them so dangerous as to require a
warning about their use. Almost any material would have burned
under the facts of this case. That fact does not mandate a warn-
ing on the product. *See* RESTATEMENT (SECOND) OF TORTS § 388
(1965).

As a result, we hold that it was proper to grant summary
judgment in favor of all Mobil defendants.

In conclusion, summary judgment was improperly granted in
favor of Graves Electric and Miller Building. It was properly
granted for the Mobil defendants.

Reversed and remanded in part. Affirmed in part.

Judges WELLS and BRASWELL concur.