66763. SINGLETON et al. v. AIRCO, INC. et al.

DEEN, Presiding Judge.

Appellant's decedent, Elizabeth Singleton, underwent surgery at Bulloch County Memorial Hospital on November 2, 1977, to repair a fracture to her knee. Anesthesia was administered by a nurse anesthetist and during the course of the surgery the patient developed malignant hyperthermia syndrome and, despite treatment for this condition, died. Appellants brought a products liability action against Burroughs-Wellcome Company and Airco, Inc., the manufacturers of Anectine and Ethrane, the drugs administered during the course of the general anesthetic, contending that the drug companies failed to provide adequate warnings of the hazards connected with the use of these drugs or a full disclosure of the adverse effects, drug interaction potentials of contraindications to the use, or precautions to be observed in the administration of these drugs insofar as these warnings relate to the triggering of malignant hyperthermia in susceptible individuals. Affidavits were filed in the case by the nurse anesthetist and the surgeon, and a deposition containing the expert testimony of Dr. Beverley Britt, Associate Professor of Anesthesiology and Pharmacology at the University of Toronto, was filed on behalf of the plaintiffs. This

appeal follows the grant of summary judgment in favor of the drug companies. *Held:*

Anectine (succinylcholine chloride) is a depolarizing muscle relaxant which is used to relax the patient's muscles so the anesthetist can pass a tube through the vocal cords in the trachea and is used in conjunction with other anesthetics. Ethrane (enflurane) is an inhalation anesthetic which renders the patient comatose. Anectine is manufactured by Burroughs-Wellcome and Ethrane by Airco. The literature published by Burroughs-Wellcome in the *Physician's Desk Reference* and included as package inserts accompanying Anectine recognizes a connection between the use of drug and malignant hyperthermia in genetically susceptible individuals who receive certain listed anesthetics (Ethrane is not included on this list) and states it "may be triggered by succinylcholine." This literature recognizes the seriousness of the syndrome and the necessity for early effective treatment. It further suggests continuous temperature monitoring to aid in the early recognition of malignant hyperthermia. Reported "adverse reactions" include tachycardia, hypertension, arrhythmias, cardiac arrest, hyperthermia, muscle fasciculation, postoperative muscle pain, and myoglobinemia, all of which are related to malignant hyperthermia according to the deposition of Dr. Britt.

The Ethrane package insert notes that "hyperpyrexia (malignant hyperthermia) has been observed with the use of Ethrane." The Ethrane literature does not contain a warning or listing of the symptoms of malignant hyperthermia. The list of "adverse reactions" includes arrythmias, a recognized symptom of malignant hyperthermia. The *Physician's Desk Reference* does not contain any material on Ethrane.

Appellant's counsel stipluated that "Dr. Britt is not only an expert in anesthesiology and pharmacology, but the world's foremost expert in malignant hyperthermia, and the plaintiff herself intends to rely on Dr. Britt's testimony in this case, and will stipluate she is an expert." Much of her extensive research in this area was done on pigs. In her deposition, the expert said: "Pigs are our nearest biochemical relatives, and they develop many of the same hereditary diseases that humans do, particularly muscle, liver, bone and heart."

Dr. Britt's very lengthy deposition reveals that she examined all the hospital records in the case and both the Anectine and Ethrane package inserts. At several points in her testimony, Dr. Britt stated that the drug manufacturers did not in any way cause or contribute to the death of Mrs. Singleton and that the warnings contained in the package inserts were adequate. She testified that since Anectine was administered prior to Ethrane, the warning in the Anectine package

insert was cumulative with the warning in the Ethrane insert. She disagreed with the suggestion in the Anectine insert that a temperature rise signaled the beginning of malignant hyperthermia because, while it is a symptom, it is not necessarily manifested first and other symptoms, or a combination of them, may first appear. She felt, however, the warning as a whole to be adequate for a trained anesthetist. She opined that any greater detail in the Anectine insert would have been impossible because there are a great many symptoms of the condition which may or may not manifest themselves at different stages of the progression of the syndrome and may appear in different sequences. Moreover, the complexity of the treatment is such that it could not appear on a package insert. Dr. Britt pointed out that at the time the warning was written the treatment methods for malignant hyperthermia were in a rapid state of change. As the total number of cases through 1977 associated with Ethrane were very few, there was much discussion at the time as to whether Ethrane was a triggering agent and many people did not believe it to be one. Dr. Britt was also of the opinion that given the state of the literature on malignant hyperthermia in 1977, any well-trained anesthetist should have been able to recognize its symptoms and be familiar with its treatment. Nurse Koch's affidavit reveals her familiarity with both the condition and the literature and wrote a paper on the subject while she was studying to be an anesthetist. She was familiar with the drug inserts and stated that she made a hobby of collecting this information while she was a student. Both she and the surgeon recognized the condition after certain symptoms appeared, including muscle rigidity, temperature rise and dark blood at the incision site, and treatment was begun.

"Ordinarily, in the case of prescription drugs, a warning as to possible danger in its use to the prescribing physician is sufficient." *Parke, Davis & Co. v. Mayes,* 124 Ga. App. 224 (183 SE2d 410) (1971); *Webb v. Sandoz Chemical Works,* 85 Ga. App. 405 (69 SE2d 689) (1952). See also *Hawkins v. Richardson-Merrell,* 147 Ga. App. 481 (249 SE2d 286) (1978), wherein this court agrees with the reasoning in Reyes v. Wyeth Laboratories, 498 F2d 1264, 1276 (5th Cir 1974) " . . . that where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use . . . As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers . . . Pharmaceutical companies then . . . are required to warn only the prescribing physician."

Dr. Britt's expert opinion testimony finds the drug insert

warnings adequate for the use of a professional trained in the administration of anesthesia, and that the drug companies were not in any way responsible for Mrs. Singleton's death. As she appeared as an expert witness on the plaintiffs' behalf, and a complete review of the record does not reveal any genuine issue of material fact remaining for determination by a jury, it was not error to grant summary judgment in favor of Airco and Burroughs-Wellcome.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED FEBRUARY 1, 1984.

*Dana F. Braun, Stanley Karsman, David H. Connolly, Jr.,* for appellants.

*Malberry Smith, Jr., Brent J. Savage, Clarence L. Martin,* for appellees.