DIANNE HOLLEY, INDIVIDUALLY, GREG L. HINSHAW, GUARDIAN OF THE ESTATE OF ERVIN LEE HOLLEY AND DIANNE HOLLEY, GUARDIAN OF THE PERSON OF ERVIN LEE HOLLEY v. BURROUGHS WELLCOME CO., A NORTH CAROLINA CORPORATION AND AYERST LABORATORIES: A DIVISION OF AMERICAN HOME PRODUCTS CORPORATION

No. 8414SC671

(Filed 4 June 1985)

1. **Rules of Civil Procedure § 56; Sales § 24— drug manufacturers—warnings on package inserts—doctor interested witness—summary judgment improper**

Summary judgment was improperly granted for defendant drug manufacturers in an action based on allegedly inadequate package inserts and promotional literature for drugs used in anesthesiology where defendants supported their motions with the deposition testimony of the administering physician that he had not relied on defendants' package inserts or promotional literature. Although the doctor was not a party to the action, he was an interested witness in that the extent of his reliance on defendants' information was within his personal knowledge and, a malpractice suit against him having been settled, it was obviously within his interest to testify that his knowledge of malignant hyperthermia and the dangers posed by defendants' products came from years of professional training and experience and not from defendants' package inserts or professional journal advertisements. His testimony was inherently suspect, and defendants did not carry their burden of disproving any of plaintiffs' essential allegations. G.S. 1A-1, Rule 56(e).

2. **Negligence § 29.2— action against drug manufacturers—inadequate warnings —nurse anesthetist foreseeable user of products**

Summary judgment for defendant drug manufacturer was improper in an action based on allegedly inadequate package inserts and promotional information for drugs used in anesthesia where defendants relied on deposition testimony that the doctor who ordered the medication did not rely on defendants' inserts or information but the customary practice was that the monitoring and maintenance of anesthetized patients was the responsibility of a trained anesthetist under the supervision of an anesthesiologist. Plaintiffs clearly raised a question of fact regarding the adequacy of defendants' warnings or promotional information as to the nurse anesthetist.

3. **Negligence § 29.3— inadequate warnings by drug manufacturers—question of proximate cause—summary judgment improper**

Summary judgment for defendant drug manufacturers was improper where plaintiffs alleged that defendants' package inserts and promotional

Holley v. Burroughs Wellcome Co.

literature did not provide adequate warnings and the doctor who administered the drugs testified that he relied on his own expertise rather than defendants' information. The doctor was an interested witness and his reliance on his own expertise was not conclusively established by his testimony; thus there was a question of fact as to the proximate cause of the injury.

4. **Rules of Civil Procedure § 8.1— detailed complaint—stricken for failure to include short and plain statement of facts—no prejudicial error**

There was no prejudicial error from the court's striking of plaintiffs' detailed complaint on the grounds that it did not contain a short and plain statement of the facts. G.S. 1A-1, Rule 8, prescribes the minimum information a pleading must contain; it does not require that a complaint contain only a "short and plain statement." However, because plaintiffs' redrafted complaint put all the essential elements before the court and the next procedural step is a trial, detailed pleadings would be of no help to plaintiffs and the trial court's ruling will not be disturbed.

Judge ARNOLD dissenting.

APPEAL by plaintiffs from *Johnson, Judge*. Judgment entered 17 November 1983 in Superior Court, DURHAM County. Heard in the Court of Appeals 12 February 1985.

This is a civil action in which plaintiffs seek damages from defendants for injuries to Ervin Lee Holley allegedly resulting from defendants' negligence with respect to the marketing and promotion of their products.

Plaintiffs' ward, Ervin Lee Holley, was admitted to Duke University Medical Center (Duke) for surgery on his knee. He had injured his knee while working. Holley was 21 years old and generally in good health. During the 6 April 1976 operation, problems developed that resulted in severe and irreversible brain damage to Holley.

On 31 December 1980, plaintiffs, Holley's guardians, filed a complaint against defendant pharmaceutical companies seeking punitive and compensatory damages in excess of $10,000. The original complaint takes up 23 pages of the record on appeal and contains a detailed and highly technical account of the sequence of events that resulted in Holley's injury. The complaint was based in part on the affidavit of Dr. Claude T. Moorman. Together, they may be summarized as follows:

Mr. Holley's injury was due to hypoxia, or oxygen deprivation, that resulted from malignant hyperthermia. Malignant

hyperthermia is a condition in which the body's temperature is elevated, causing an increase in the level of blood acidity and a corresponding decrease in the body's ability to supply oxygen to vital organs, including the heart and brain. Malignant hyperthermia is a condition associated with anesthesia; it can be caused by use of the general anesthetic known as halothane, manufactured by defendant Ayerst Laboratories and marketed by defendant American Home Products under the name of Fluothane. Succinylcholine chloride, a muscle relaxant manufactured and marketed by defendant Burroughs Wellcome under the trade name Anectine, also causes malignant hyperthermia and can aggravate an existing condition.

Anesthesia was induced in Ernest Lee Holley by administering sodium thiopental intravenously and was maintained by having him breathe a mixture of oxygen, nitrous oxide and Fluothane through a face mask. Dr. Donald Hooper was a staff anesthesiologist at Duke who prescribed Holley's anesthesia. Under his supervision, anesthesia was induced and maintained by Elizabeth Evans, a nurse anesthetist at Duke. During the next hour, nurse Evans noted a constant increase in blood pressure and heart rate and began to experience difficulty maintaining proper ventilation of Holley with the face mask. She summoned Dr. Hooper, who diagnosed bronchospasm and directed Nurse Evans to use a tracheal tube instead of the face mask. In order to relax Holley's constricted throat muscles and allow for easy insertion of the tube, Nurse Evans was directed by Dr. Hooper to give Holley Anectine intravenously. Rather than relaxing, however, Holley's muscles constricted further, making his jaw difficult to open. Again at Dr. Hooper's direction, a second dose of Anectine was administered. Mr. Holley then went into cardiac arrest and several minutes were required to resuscitate him.

According to the complaint and supporting affidavit of Dr. Moorman, Holley's increased heart rate, blood pressure and muscle rigidity are classic symptoms of developing malignant hyperthermia. Holley's body temperature was not taken. These symptoms apparently were not recognized for what they were by Nurse Evans or Dr. Hooper, who misdiagnosed the condition. When the first dose of Anectine aggravated Holley's condition, malignant hyperthermia was still not diagnosed. The second dose of Anectine further aggravated Holley's already hypoxic condi-

tion, causing his cardiac arrest. During the several minutes that were required to restore Holley's cardiac and respiratory functions, his brain was deprived of oxygen and was damaged severely and irreversibly.

One of the keys to recognizing and treating malignant hyperthermia, according to Dr. Moorman, is being aware of when the condition exists and recognizing the symptoms for what they are. Although Holley's anesthesia chart shows "a typical picture of increasing hypoxia," these indications apparently were not recognized as symptoms of malignant hyperthermia either by Nurse Evans or Dr. Hooper. As a consequence, Holley was not treated for malignant hyperthermia in time to prevent his injury.

According to plaintiffs and Dr. Moorman, primary sources of awareness of the consequences and side effects of using pharmaceuticals are the package inserts that accompany the products, entries in the Physician's Desk Reference, a standard reference text in the medical profession, and promotional information found in advertisements and provided by product salesmen. With respect to defendants' products, none of these sources in Dr. Moorman's opinion contained sufficient information or warnings to put an anesthesiologist or nurse anesthetist on notice of the possibility that the use of the products might induce or aggravate malignant hyperthermia in a patient. Dr. Moorman's affidavit lists five specific aspects in which the information then available on the products was lacking:

1. There is no warning that these agents are *triggering* agents for malignant hyperthermia.

2. There is no description of the early warning signs or progressing symptomatology of this condition which would alert an anesthetist or anesthesiologist to the rapid progression of the full-blown condition.

3. There are no suggestions as to a treatment regimen which would reverse the devastating effects of this reaction.

4. There is no warning that when suspected reactions to either one of these agents occurs, the continuing use of these agents in conjunction or as sole agents is absolutely contraindicated.

5. There is no warning as to other contraindicated drugs once this condition has developed such as the contraindication of the use of calcium which was utilized during resuscitation of this patient and could have aggravated the effects of the malignant hyperthermia. [Emphasis in original.]

Plaintiffs' complaint essentially sets forth the following theory of defendants' liability for the injury to E. L. Holley: (1) Defendants knew the dangers involved in the use of their products, specifically that their use could induce and aggravate malignant hyperthermia; (2) defendants actively marketed their products through advertisements, direct mailings of promotional literature, and direct solicitations by sales people; (3) defendants provided inadequate warnings regarding the known propensity of their products to cause malignant hyperthermia in some patients; (4) defendants had a duty to warn potential users of these dangers; and (5) the injury to E. L. Holley could have been prevented by adequate warnings.

Defendants moved to dismiss the complaint for failure to state a claim for relief and to strike the complaint on the grounds that it did not contain a short and plain statement of the facts. The motions to strike were allowed on 27 April 1981. Plaintiffs filed a new and much shorter complaint on 28 May 1981, alleging the same theory of liability. Defendants answered, denying the material allegations of the complaint.

Though the details are not clear from the record, plaintiffs also sued Duke and Dr. Hooper for malpractice in connection with the injury. That action was settled prior to trial.

In June of 1983, defendants moved for summary judgment and supported their motions with affidavits and the deposition of Dr. Hooper. The affidavits concerned the marketing practices of defendants and the warnings provided by defendants regarding the use of their products. In his deposition, Dr. Hooper denied relying on any of the information made available by defendants through advertisements, representations by sales people, the Physicians' Desk Reference or package inserts regarding the use and possible dangers of their products. Dr. Hooper also denied that Holley's injury had been caused by malignant hyperthermia. Plaintiffs responded with the affidavit of a pharmacologist that supported the claims made in the complaint. On 17 November

1983, the trial court entered summary judgment for defendants. Plaintiffs appealed.

*McCain and Essen, by Grover C. McCain, Jr., for plaintiff-appellants.*

*Newsom, Graham, Hedrick, Bryson, Kennon and Faison, by E. C. Bryson, Jr., and Joel M. Craig, for defendant-appellee American Home Products Corporation.*

*Teague, Campbell, Conely and Dennis, by C. Woodrow Teague and Richard B. Conely for defendant-appellee Burroughs Wellcome.*

EAGLES, Judge.

I

Plaintiffs contend that it was error to allow defendants' motions for summary judgment because genuine issues of fact exist that must be submitted to the jury. We agree.

Plaintiffs' specific contentions are (1) that there is an issue of fact as to the credibility of defendants' deposition witness, Dr. Hooper, that presents a jury question; (2) that Dr. Hooper was not the only person whose failure to recognize the symptoms of malignant hyperthermia was critical to the treatment of E. L. Holley; and (3) that there is a factual question as to the causal relationship between defendants' alleged failure to provide adequate warnings and the injury. If any of these specific contentions is valid, the court's entry of summary judgment for defendants was error.

a.

Our courts have often enunciated the principles governing summary judgment. They are well established in our law. "The party moving for summary judgment has the burden of establishing the lack of any triable issue of fact. His papers are carefully scrutinized and all inferences are resolved against him. . . . The court should never resolve an issue of fact." *Kidd v. Early,* 289 N.C. 343, 352, 222 S.E. 2d 392, 399 (1976). *See also Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975); *Kessing v. Mortgage Co.,* 278 N.C. 523, 180 S.E. 2d 823 (1971). Ordinarily, summary judgment is not appropriate in negligence actions because the

right of recovery usually depends on the application of the reasonable person standard of care. Only the jury, under instructions from the court, may apply that standard. *Moore v. Fieldcrest Mills,* 296 N.C. 467, 251 S.E. 2d 419 (1979); *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972). *See generally,* 11 N.C. Index 3d, *Rules of Civil Procedure* Sections 56-56.7 (1978 and Supp. 1984).

North Carolina does not recognize strict liability in products liability actions. *Smith v. Fiber Corp.,* 300 N.C. 669, 268 S.E. 2d 504 (1980); *McCollum v. Grove Manufacturing Co.,* 58 N.C. App. 283, 293 S.E. 2d 632 (1982), *affirmed per curiam,* 307 N.C. 695, 300 S.E. 2d 374 (1983); *Wilson Brothers v. Mobil Oil,* 63 N.C. App. 334, 305 S.E. 2d 40, *disc. rev. denied,* 309 N.C. 634, 308 S.E. 2d 718 (1983). Therefore, whether defendants can be held liable in this case must be determined in accordance with ordinary negligence principles. *McCollum, Wilson,* both *supra.* In order to establish a *prima facie* case of negligence on a products liability action, a party must show, "(1) evidence of a standard of care owed by the reasonably prudent person in similar circumstances; (2) breach of that standard of care; (3) injury caused directly or proximately by the breach, and; (4) loss because of the injury." *City of Thomasville v. Lease-Afex, Inc.,* 300 N.C. 651, 656, 268 S.E. 2d 190, 194 (1980); *McCollum, supra.*

[1]    Here, the standard of care or duty allegedly owed by defendants to E. L. Holley was to warn the personnel responsible for his anesthesia of the risk that the use of their products to induce anesthesia could cause malignant hyperthermia and to provide information to the responsible personnel concerning how to recognize and treat the condition. The breach of that duty alleged by plaintiffs is that the warnings and information provided by defendants were inadequate. This breach allegedly resulted in Holley's malignant hyperthermia going undetected until it was too late to prevent the injury. Though it is not stated in defendants' motions or in the trial court's order, it is clear from the documents supporting their motions that defendants were attempting to defeat plaintiffs' allegation that the breach caused the injury. This, at least, is the issue argued on appeal.

Defendants' strategy is clear: if they can establish that Dr. Hooper did not rely on the information provided by defendants with respect to their products, the question of whether the warn-

ings were adequate would be irrelevant and plaintiffs' allegations regarding proximate cause would be defeated. Though we have found no North Carolina cases on point, the principles of ordinary negligence and decisions from other jurisdictions seem to justify this strategy. *E.g., Oppenheimer v. Sterling Drug, Inc.,* 7 Ohio App. 2d 103, 219 N.E. 2d 54 (1964); *Ball v. Mallinckrodt Chemical Works,* 53 Tenn. App. 218, 381 S.W. 2d 563, 19 A.L.R. 3d 813 (1964).

Defendants supported their motions with several affidavits but relied primarily on the deposition of Dr. Hooper. Dr. Hooper testified that he was aware of the information available regarding the propensity of defendants' products to cause malignant hyperthermia but that he neither read nor relied on it. Rather, Dr. Hooper testified that his specialty involved a detailed awareness of the very information that plaintiffs claim defendants failed to provide: (1) that Fluothane and Anectine could cause malignant hyperthermia and (2) how to recognize and treat the condition. Dr. Hooper testified that he had set up at Duke a malignant hyperthermia awareness program that included a kit in each operating room and a protocol for dealing with the condition. Dr. Hooper further testified that he did not think that E. L. Holley had developed malignant hyperthermia. The effect of Dr. Hooper's testimony was that his knowledge of the causes, symptoms, effects and treatment of malignant hyperthermia was so sophisticated that he did not need to, and in fact did not, rely on the allegedly inadequate information provided by defendants relating to the use and possible adverse effects of their products.

If Dr. Hooper's lack of reliance could be proved, the key element of proximate cause in plaintiffs' *prima facie* case would be defeated. The threshold question is whether defendants' forecast of the evidence is sufficient to establish that Dr. Hooper did not rely on defendants' package inserts or promotional materials concerning the use of their products. Plaintiffs contend that Dr. Hooper's deposition testimony is the only evidence tending to show that he did not rely on defendants' information and that it is suspect because Dr. Hooper is an interested witness. We agree.

G.S. 1A-1, Rule 56(e), provides as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not

rest upon the mere allegations or denials of his pleading, but his response, supported by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial.

Witness credibility is ordinarily a jury question. On a motion for summary judgment, however, the judge may determine that a deposition witness is credible as a matter of law where only latent doubts exist as to the witness's credibility and the opposing party fails to go beyond his pleadings in opposing the motion. *Conner v. Spanish Inns Charlotte, Inc.*, 294 N.C. 661, 242 S.E. 2d 785 (1978); *Kidd v. Early, supra.* In North Carolina, the mere fact that a witness has an interest in a case is not sufficient by itself to render his deposition testimony inherently suspect for purposes of summary judgment. *Taylor v. City of Raleigh*, 290 N.C. 608, 227 S.E. 2d 576 (1976). In order for the testimony of an interested witness to be inherently suspect, it must concern facts peculiarly within the knowledge of the witness. *Carson v. Sutton*, 35 N.C. App. 720, 242 S.E. 2d 535 (1978).

In our opinion, Dr. Hooper's deposition testimony was subject to more than latent doubt as to its credibility. Dr. Hooper is not a party to this action. He was, however, the physician responsible for anesthetizing E. L. Holley and was a named defendant along with Duke in a malpractice action filed by plaintiffs based on the injury to E. L. Holley. That action was settled prior to trial. Plaintiffs contend that Dr. Hooper is interested because his reputation in the medical community could be adversely affected if he admitted that his own lack of knowledge may have contributed to Holley's injury. Obviously, it is in his interest, having settled the malpractice action, to testify that his knowledge of malignant hyperthermia and the dangers posed by defendants' products came from years of professional training and experience and not from defendants' package inserts or professional journal advertisements. This interest is clearly inferable from the record. It is likewise clear that Dr. Hooper's knowledge of malignant hyperthermia and the extent of his reliance on defendants' warnings and other information are matters that are entirely within his personal knowledge and impossible to verify independently from the record.

Construing the documents supporting and opposing defendants' motion for summary judgment in the light most favorable to the plaintiff, there is clearly sufficient evidence to permit the inference that Dr. Hooper was an interested witness and to raise more than a latent doubt as to his credibility. Accordingly, the test for determining whether testimony is inherently suspect is satisfied. The burden of disproving the testimony or impeaching its credibility was thus never shifted to plaintiffs and they were not required to go beyond their pleadings in order to defeat the motion. *See Mace v. Bryant Construction Co.*, 48 N.C. App. 297, 269 S.E. 2d 191 (1980).

Defendants do not seriously contend either that Dr. Hooper was not interested or that certain key facts in his testimony were not matters of his personal knowledge. Rather, they argue that it is plaintiffs who must prove that Dr. Hooper relied on defendants' promotional literature and package inserts and that it is precisely because these facts are purely subjective and known only to Dr. Hooper that plaintiffs have failed to prove their case. This failure, they argue, entitles them to summary judgment.

Defendants' argument is not persuasive. Stripped to its essentials, this is a negligence action. As indicated above, plaintiffs have made the necessary allegations. On their motion for summary judgment defendants failed to carry their burden of disproving any one of plaintiffs' essential allegations. Therefore, plaintiffs are not required to allege or prove anything else in order to avoid summary judgment. *Mace v. Bryant Construction Co., supra.* Even so, however, we note that plaintiffs did come forward with the affidavit of Dr. James T. O'Donnell, a pharmacologist, that directly rebutted Dr. Hooper's deposition. With regard to the question of whether Dr. Hooper relied on defendants' warnings and promotional literature, we note parenthetically that in jurisdictions following the rule of strict liability in actions like this one, Dr. Hooper's reliance would be irrelevant. *See* Annot., 53 A.L.R. 3d 239 (1973 and Supp. 1984).

It is clear that Dr. Hooper's testimony is inherently suspect and not adequate to defeat plaintiffs' *prima facie* case. Because the deposition was the only evidence tending to show a lack of reliance on defendants' package inserts and promotional literature, the court's entry of summary judgment was error.

b.

[2]   Even if Dr. Hooper's deposition testimony were not inherently suspect, he is not the only person whose reliance on defendants' package inserts and promotional literature would affect defendants' liability to plaintiffs. Ms. Evans, a Certified Registered Nurse Anesthetist, was left in charge of Holley's anesthesia after she had helped Dr. Hooper induce it. She noticed his symptoms, but did not recognize them as symptoms of malignant hyperthermia which, according to plaintiffs' supporting affidavits, they clearly were.

Though we have found no case that is directly on point, standard principles of negligence law dictate that Nurse Evans was a foreseeable user of defendants' products to whom defendants' duty to warn applied. *Stegall v. Catawba Oil Co.*, 260 N.C. 459, 133 S.E. 2d 138 (1963); *Ziglar v. DuPont*, 53 N.C. App. 147, 280 S.E. 2d 510, *disc. rev. denied*, 304 N.C. 393, 285 S.E. 2d 838 (1981); *Davis v. Siloo*, 47 N.C. App. 237, 267 S.E. 2d 354, *disc. rev. denied*, 301 N.C. 234, 283 S.E. 2d 131 (1980); Restatement (Second) of Torts, Section 401 (1965). *See generally*, Annot., 76 A.L.R. 2d 9 (1961); 72 C.J.S. Supp. *Products Liability* Section 27 (1975). Defendants argue that Nurse Evans' knowledge of malignant hyperthermia is irrelevant because Mr. Holley's anesthesia was solely Dr. Hooper's responsibility. This argument is unpersuasive in the present context.

Defendants' argument would be appropriate in cases like those they cite where a nurse only administered a medicine or treatment that had been prescribed by a physician but was otherwise not responsible for the patient's care. *E.g., Reyes v. Wyeth Laboratories*, 498 F. 2d 1264, *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed. 2d 688 (5th Cir. 1974); *Byrd v. Marion General Hospital*, 202 N.C. 337, 162 S.E. 738 (1932). *See generally*, Annot., 94 A.L.R. 3d 748 Section 4(a) (1979). In most medical malpractice actions, the same argument would insulate Nurse Evans from personal liability under the doctrine of "captain of the ship" or *respondeat superior. E.g., McCullough v. Bethany Medical Center*, 235 Kans. 732, 683 P. 2d 1258 (1984). *See generally*, 70 C.J.S. *Physicians and Surgeons* Section 54 (1951 and Supp. 1984). Their argument is not appropriate in actions like the present one for products liability.

It appears to be standard practice, however, that the monitoring and maintenance of anesthetized patients is the responsibility of a trained anesthetist, like Nurse Evans, acting under the supervision of an anesthesiologist, like Dr. Hooper. *See* Annot., 31 A.L.R. 3d 1114 (1970 and Supp. 1984) and cases cited therein. Dr. Hooper's deposition indicates that this was the customary practice at Duke. Where this is the case, we believe that the rule announced in *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E. 2d 289 (1974), that a pharmaceutical company was required to provide adequate warnings regarding its products to the "medical profession," ought to apply as well to other health care professionals using the products.

In a case that is nearly identical on its facts, even to the point of involving the Anectine and defendant Burroughs Wellcome, the Georgia Court of Appeals held that "drug insert warnings adequate for the use of a *professional trained in the administration of anesthesia*" [emphasis added] were sufficient to discharge the manufacturer's duty to provide adequate warnings. *Singleton v. Airco*, 169 Ga. App. 662, 664-65, 314 S.E. 2d 680, 682 (1984). It is clear from the court's language and the factual context of the case that the *Singleton* court meant for the duty to warn to apply not only to doctors but to trained anesthetists as well, despite *dicta* to the contrary. That approach is well-reasoned and appropriate to the facts before us. Liberally construed, plaintiffs' complaint and supporting affidavits establish the proposition that Nurse Evans might have reacted to Holley's symptoms sooner and more appropriately than she did, possibly avoiding injury, if she had been made aware of the propensity for defendants' products to cause and aggravate malignant hyperthermia and if she had known how to recognize and treat it. Since defendants present no rebuttal evidence on this issue, plaintiffs have clearly raised a question of fact regarding the adequacy of defendants' warnings and promotional information as to Nurse Evans.

c.

[3] We have noted that Dr. Hooper's deposition testimony does not defeat plaintiffs' allegation that the inadequate warnings caused E. L. Holley's injury. We hold that Dr. Hooper's reliance on his own expertise, because at this stage of the proceedings it is not conclusively established, does not constitute an intervening

cause of the injury so as to relieve defendants of liability. *See Hester v. Miller*, 41 N.C. App. 509, 255 S.E. 2d 318, *disc. rev. denied*, 298 N.C. 296, 259 S.E. 2d 913 (1979). Thus, there is a question of fact as to the proximate cause of Holley's injury.

II

**[4]** Plaintiffs also assign as error the court's striking of their complaint on the apparent grounds that the complaint did not contain a short and plain statement of the facts. We agree that it was error. Rule 8 of our Rules of Civil Procedure, G.S. 1A-1, provides, in pertinent part:

(a) *Claims for relief.*—A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim or third party claim shall contain

(1) A short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, . . . or occurrences intended to be proved showing that the pleader is entitled to relief.

This rule prescribes the minimum information that a pleading *must* contain; it does not require that a complaint contain *only* a "short and plain statement." As our Supreme Court stated in *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970), " 'There is nothing in the rules to prevent detailed pleading if the pleader deems it desirable.' " *Id.* at 105, 176 S.E. 2d at 167, *quoting* Sizemore, General Scope and Philosophy of the New Rules, 5 Wake Forest Intra. L. Rev. 1, 15 (1969).

Rule 12(f) of our Rules of Civil Procedure permits a party to make motions to strike on the grounds that a pleading contains an "insufficient defense or any redundant, irrelevant, immaterial, impertinent or scandalous matter." Though lengthy, highly detailed and technical, plaintiffs' original complaint contains nothing that warranted striking it in its entirety. Neither defendants' motions nor the trial court's order indicate with particularity the offending portions of the complaint. The complaint was clearly sufficient to put defendants on notice of the claims against them, which is all that G.S. 1A-1, Rule 8(a)(1) requires.

Nevertheless, this error was not prejudicial. The redrafted complaint puts the essential issues before the court. In light of

our reversal of the summary judgment, the next procedural step is a trial which is likely to be protracted and complex. While detailed pleadings may have aided plaintiffs up to this point, they would be of no help now. Accordingly, the trial court's ruling will not be disturbed.

The trial court's order allowing defendants' motions for summary judgment is reversed and the cause remanded for trial.

Reversed and remanded.

Judge PARKER concurs.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

Plaintiffs claim that the package inserts and promotional literature provided by defendants for their drugs Fluothane and Anectine gave inadequate warnings of the dangers involved in their use, in particular, the risk that malignant hyperthermia might occur in certain individuals. Plaintiffs claim further that the defendants' failure to provide adequate warnings proximately caused injury to Ervin Lee Holley. Plaintiffs have presented affidavits supporting their assertions that the information in the package inserts and promotional literature was inadequate and that, if it had been adequate, it would have notified anesthesia personnel and Mr. Holley's injury would not have occurred.

In response, defendants presented the deposition of Dr. Donald Hooper, the anesthesiologist in charge when Ervin Holley suffered injury. Dr. Hooper testified that he did not rely on package inserts when he administered Fluothane and Anectine to Mr. Holley. Rather, he testified that he had developed an extensive independent knowledge of the symptoms and treatment of malignant hyperthermia as an adverse reaction to Anectine and Fluothane during his medical training as an anesthesiologist and through his reading of the medical literature. Indeed, he testified that he had worked to design malignant hyperthermia kits to be used in the operating rooms at Duke Medical Center. Dr. Hooper's testimony suggests that he was in full knowledge of the

information that an expanded warning on the package inserts and promotional literature might provide.

The evidence presented by plaintiffs does not contradict Dr. Hooper's testimony that he had independent knowledge of the relation between Fluothane and Anectine and malignant hyperthermia and of the treatment to be used when a patient shows signs of developing the syndrome. Given that Dr. Hooper's testimony is undisputed, there is lacking the required element of proximate cause between the defendants' alleged failure to warn and Ervin Holley's injury.

Plaintiffs allege, however, that Dr. Hooper was an interested witness and that his credibility should be determined by the jury. The majority agrees, finding that Dr. Hooper was not only an interested witness, but also one whose testimony was "inherently suspect." If Dr. Hooper was merely an interested witness, then under the rule of *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976), a summary judgment still could be grounded on his testimony if the opposing party failed to produce materials supporting their opposition or to utilize Rule 56(f) or failed to point to specific areas of impeachment or contradiction and summary judgment is otherwise appropriate, *Kidd*, 289 N.C. at 370, 222 S.E. 2d at 410.

I do not agree, however, that Dr. Hooper was an interested witness. My review of the record does not indicate that he had any connection with the defendants or plaintiffs, pecuniary or otherwise, which would have given him an interest in the outcome of this case of significance in a court of law. Plaintiff asserts that Dr. Hooper feared that his professional reputation might be injured if he revealed that he was not aware of the risk of malignant hyperthermia connected with use of Fluothane and Anectine. Plaintiff's assertion is mere speculation.

Moreover, Dr. Hooper's deposition contains no inherent contradictions, or other reason to doubt its truthfulness. Unlike an affidavit, the deposition did contain testimony under cross-examination. Dr. Hooper's deposition is therefore not "inherently suspect," and presents no issue of fact for the jury.

Dr. Hooper's testimony, then, would properly support summary judgment on grounds of lack of proximate causation.

The trial court's order should be affirmed.