Tina Grimsley **WALKER, Individually and as Next Friend of Luchelle Walker, Plaintiff,**

v.

**MERCK & CO., INC., Defendants.**

**Civ. A. No. 85–202–1–MAC.**

United States District Court, M.D. Georgia, Macon Division.

Nov. 26, 1986.

Thomas H. Hinson, Macon, Ga., Del Percilla, Jr. and Thomas Wm. Malone, Atlanta, Ga., for plaintiff.

Ben L. Weinberg, Jr. and D. Keith Calhoun, Atlanta, Ga., for defendants.

FITZPATRICK, District Judge:

Presently before this court is defendant's motion for summary judgment. The material facts in this case are straightforward and undisputed. The case is a products liability suit brought by plaintiff, Tina Grimsley Walker, and her daughter, Luchelle Walker, against a pharmaceutical manufacturer, Merck & Co., Inc. (hereinafter Merck). Plaintiff Tina Grimsley Walker alleges injury to her daughter arising out of the mother's receipt of a measles, mumps and rubella vaccine commonly known as "M–M–RII". Merck manufactured the vaccine that plaintiffs allege caused the injury to Luchelle Walker.

I.

FACTS

In 1982, Bibb County maintained a program that required certain students attending public high schools in the county to be injected with the M–M–RII vaccine before being admitted to school. On January 5, 1982, Tina Grimsley Walker, then pregnant with Luchelle Walker, received the M–M–RII vaccine at the Bibb County Health Department. The vaccine was administered by a licensed practical nurse named Josephine Long. Mrs. Long has approximately twenty years experience as a licensed practical nurse. The M–M–RII that she administered was packaged in containers. Each container of the immunization serum included a circular describing the risks inherent in the M–M–RII vaccine. The circular states that one of the inherent risks of the vaccine is that it can cause injury to an unborn fetus. Because the effects of the vaccine on an unborn fetus are unknown, pregnant females are warned not to take the vaccine. The circulars contained in the containers adequately described the potential risks to an unborn fetus, including the fact that the vaccine can cause a child to be born blind.

The nurse who administered the vaccine to Tina Grimsley Walker stated unequivocally that before she gave Walker the vaccine she inquired of Walker when her last period had occurred, she asked Walker if she were sexually active, and she asked Walker if there was any possibility whatsoever that she was pregnant. The nurse stated that Walker responded that she had had a period beginning December 13, 1981. According to the nurse, Walker also stated that she was not sexually active, and that there was no possibility of pregnancy. Walker, on the other hand, stated that she remembered the nurse having asked her when her last period was, but she did not remember specifically whether or not the nurse asked her about her sexual activity or about the possibility of pregnancy. However, this factual dispute is not material, and this case may be dismissed on defendant's summary judgment motion without a determination of the veracity of either of these witnesses.

Additionally, Merck contracted with the Center for Disease Control ("CDC"), the distributor of the M–M–RII, to provide that each recipient of the drug would be warned of inherent risks. The CDC provided a consent form to be signed by each vaccinee, or his or her legal guardian, before the vaccine could be administered. The form clearly delineated all potential risks connected to the vaccine. The consent form included a paragraph on potential effects on an unborn fetus. Plaintiff's mother, Vicki Unger, signed this consent form when she went to the Bibb County Health Department with her daughter the day the vaccine was administered.

On September 14, 1982, Luchelle Walker was born to Tina Grimsley Walker. Luchelle's visual capability is extremely limited, and plaintiffs allege that her blindness was proximately caused by the M–M–RII vaccine. More specifically, plaintiffs allege that Merck's failure to warn them of M–M–RII's risks proximately caused Luchelle's injuries. Merck contends that the M–M–RII vaccine did not cause Luchelle Walker's injuries, and, even assuming that it did, plaintiff was adequately warned of the potential danger associated with M–M–RII and nevertheless consented to the immunization.

## II.

### CONCLUSIONS OF LAW

■ In this products liability suit, involving what may be categorized as an "inherently dangerous" or "unavoidably unsafe" drug, the manufacturer's duty is to properly prepare and properly market the drug, and to adequately warn about all inherent risks. *Center Chemical Company v. Parzini*, 234 Ga. 868, 218 S.E.2d 580 (1975). A manufacturer is not an insurer against all risks of injury associated with its product, and plaintiffs are not entitled to recover unless they can prove that the M–M–RII was defective. *See Hunt v. Harley Davidson Motor Co.*, 147 Ga.App. 44, 248 S.E.2d 15 (1978). In determining the existence of a "defect" in the case of an inherently dangerous product, the Georgia Supreme Court has recognized that:

> Strict liability is not imposed under the statute [O.C.G.A. § 51–1–11 (1982)] merely because a product may be dangerous. Many products cannot be made completely safe for use and some cannot be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective. To hold otherwise would discourage the marketing of many products because some danger attended their use. We find nothing in [O.C.G.A. § 51–1–11] that makes a manufacturer strictly liable for such products absent a defect.

*Parzini*, 234 Ga. at 870, 218 S.E.2d at 582.

■ Luchelle Walker's injuries are exactly those which Merck disclosed to the CDC as being a potential result of the drug's effect on an unborn child. There is no contention here that Merck inadequately prepared or marketed the drug. Therefore, Merck can only be liable if this court

finds that Merck failed to adequately warn potential users of the drug of the inherent risks. *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.1974), *cert. denied* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). Manufacturers in the situation of Merck, under Georgia law, must use reasonable care in warning users of such risks. *Wells by Maihafer v. Ortho Pharmaceutical Corp.*, 615 F.Supp. 262 (N.D. Ga.1985), *modified on other grounds* 788 F.2d 741 (11th Cir.1986). This court finds that Merck took all precautions necessary as the manufacturer of M–M–RII to warn of any potential injury, and thus Merck is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

A. Merck's duty was to warn the learned health professionals who administered M–M–RII of the risks inherent in the drug.

■ Because M–M–RII was produced and marketed by Merck as a prescription drug only, the vaccine could not be administered except by a trained health professional. (Defendant's Exhibit 4, pp. 4, 5, Defendant's Brief in Support of Motion for Summary Judgment). Merck had a duty to warn the professionals who administered the M–M–RII vaccine of the risks inherent in the drug. This duty was fulfilled by the warnings described in the circular enclosed in each container of M–M–RII. *See Hawkins v. Richardson-Merrell, Inc.*, 147 Ga. App. 481, 249 S.E.2d 286 (1978) in which the court states:

> We cannot quarrel with the general proposition that where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drugs used. The special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of the dangers inherent in his products ... Pharmaceutical companies, then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician who acts as a learned intermediary between manufacturer and consumer.

*Id.* at 483, 249 S.E.2d at 288, quoting *Reyes*, 498 F.2d at 1276. *See also, Parke Davis and Co. v. Mayes*, 124 Ga.App. 224, 183 S.E.2d 410 (1971); *Timm v. Upjohn Co.*, 624 F.2d 536 (5th Cir.1980), *cert. denied.* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981).

The Georgia Court of Appeals has held that the learned intermediary exception applies to professional nurses as well as physicians. *Singleton v. Airco, Inc.*, 169 Ga. App. 662, 314 S.E.2d 680 (1984). In this case, plaintiff received the M–M–RII injection from a licensed practical nurse who was aware of the risks associated with M–M–RII, particularly the risks for pregnant females, and who stated that she had read and understood the circular accompanying the M–M–RII.

Plaintiff argues that the learned intermediary exception should not apply in this case and that defendant had a duty to warn the ultimate consumer of the M–M–RII rather than to merely warn the administering health professional. Plaintiff relies on judicial authority considering nationwide mass immunization programs. Several courts have held, in cases involving the polio vaccine, that the manufacturer has a duty to warn the ultimate consumer about the risks of being inoculated. *Givens v. Lederle*, 556 F.2d 1341 (5th Cir.1977); *Davis v. Wyeth Laboratories*, 399 F.2d 121 (9th Cir.1968); *Reyes*, 498 F.2d 1264.

This court will not extend the *Davis-Reyes-Givens* line of decisions beyond their facts, as the exception to the learned intermediary rule established for polio cases "is quite narrow and highly fact specific." *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 647 (4th Cir.1981). The Georgia courts have not addressed the issue of whether to extend this doctrine to cases such as the case at hand, and this court declines to do so because this case does not concern a "massive, nationwide immunization pro-

gram" such as the program employed in the polio vaccine cases. The facts in this case indicate a local program instituted only to immunize certain high school students who needed the vaccine or who did not have their updated shot records.

Because the M–M–RII program was aimed at select students in Bibb County only, it would be highly impracticable, if not impossible, for Merck to determine which students would need to receive the vaccine, and then to warn each recipient individually. Although the court realizes that Merck conceivably could have taken other measures to warn high school students in Bibb County about the risks inherent in M–M–RII, such measurers would be extreme and would place an undue hardship on manufacturers of inherently dangerous drugs. This case clearly falls within the ambit of the learned intermediary rule.

Furthermore, as set forth in *Reyes*, in lieu of warning the ultimate consumer, the manufacturer may fulfill its duty to warn "by obligating the purchaser [of the drug] to give warning." *Reyes*, 498 F.2d at 1276. In this case, Merck sold the M–M–RII to the CDC, and contractually obligated the CDC to warn all potential vaccinees of the risks inherent in M–M–RII. *See* Exhibit 4, Defendant's Brief in Support of Motion for Summary Judgment.

B. Assuming arguendo that the learned intermediary rule does not apply, and that Merck was under a duty to directly warn consumers of risks inherent in the vaccine, Merck has fulfilled this duty because plaintiff was adequately warned.

At the time plaintiff was vaccinated with the M–M–RII, plaintiff knew that there was a possibility that she was pregnant. She admitted in her deposition that she had had sexual intercourse on December 17, 1981, without using contraceptives. Tina Walker and her mother were provided with a consent form describing the risks inherent in M–M–RII, which Tina Walker's mother signed. The form contains a sec-

tion entitled "Pregnancy", which states that:

> Measles and mumps vaccines are not known to cause special problems for pregnant women or their unborn babies. However, doctors usually avoid giving any drugs or vaccines to pregnant women unless there is a specific need. To be safe, pregnant women should not get measles or mumps vaccine. A woman who gets measles or mumps vaccine should wait three months before getting pregnant.

> Because rubella disease can cause serious problems for pregnant women or their unborn babies, it is possible that rubella vaccine might also cause those problems. Pregnant women should not get rubella shots. A woman who gets a rubella shot should wait three months before getting pregnant.

Defendant's Exhibits 7(a), 8(b), Defendant's Brief in Support of Motion for Summary Judgment.

This warning is clear and understandable. Plaintiff Tina Walker's mother, who signed the form, admits that she is capable of reading, and that she was capable of understanding the warnings in the form. Plaintiff's mother admits that her signature is on the consent form. The Georgia Code provides that any parent may consent to medical treatment for her minor child. O.C.G.A. § 31–9–2 (1982). In a recent Seventh Circuit decision a consent form quite similar to the one in this case was held, as a matter of law, to meet the standard of care regarding disclosure of risks inherent in vaccines. *Boruski v. United States*, 803 F.2d 1421 (7th Cir.1986). The form in that case, as in the case at hand, contained a statement that the person signing the form had read all of the information on the form, had understood the benefits and risks of the vaccine, and had requested that the vaccine be given to them or to the person for whom they were authorized to sign. *Id.* at 1424.

Manufacturers are not insurers, and a manufacturer cannot be held liable for a consumer's failure to read or to listen to

understandable warnings. Even taking as true Tina Walker's allegation that she does not remember being asked about the possibility of pregnancy, the fact remains that Tina Walker and her mother were provided with a form delineating the risks inherent in M–M–RII while they were waiting in line for Tina Walker to be vaccinated. Merck used all reasonable care required by law to warn of potential injury.

The pleadings, interrogatories and answers thereto, depositions on file, and affidavits, when construed most favorably to plaintiffs, show that there is no issue of fact in this case which would permit plaintiffs to recover damages from Merck. Because there is no genuine issue of material fact, and defendant is entitled to judgment as a matter of law, it is this court's decision that defendant's motion for summary judgment is GRANTED.