[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10167

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 5, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00077-CV-RLV4

DONNA LADEAN DIETZ,
individually, and as Surviving Spouse
of Garrison David Dietz,
deceased, and as Temporary
Administratrix of the Estate of
Garrison David Dietz, Deceased,

Plaintiff-Appellant,

versus

SMITHKLINE BEECHAM CORP.
d.b.a. Glaxo SmithKline,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 5, 2010)

Before TJOFLAT and BARKETT, Circuit Judges, and BARZILAY,[*] Judge.

BARZILAY, Judge:

Plaintiff-Appellant Donna Dietz ("Appellant") appeals the district court's grant of summary judgment for Defendant-Appellee Smithkline Beecham Corp. ("SBC") in her wrongful death suit, which arose out of her husband's suicide while taking Paxil, a drug manufactured by SBC. For the reasons stated below, the district court's decision is affirmed.

## I. Background & Procedural History

On April 3, 2002, the 33 year-old Garrison David Dietz ("Dietz"), Appellant's late husband, met with his family practitioner, James Zuppa, M.D. Dietz presented with anxiety, depression, insomnia, and stress, but expressed that he had no suicidal ideation and disclosed no history of psychological illness. R.E. Doc. 43 Ex. B at 56:5-19, 61:14-23. Dr. Zuppa diagnosed Dietz with major depression and offered him hospitalization for psychiatric treatment, which Dietz declined. R.E. Doc. 43 at 62:2-5, 66:3-4. Consequently, Dr. Zuppa prescribed him Paxil, a selective serotonin reuptake inhibitor ("SSRI") antidepressant manufactured by SBC, and Ambien, a sleep aid. R.E. Doc. 43 at 62:11. He then

---

[*]Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

instructed Dietz to schedule a follow-up visit in three weeks and to contact him in the event of an "acute crisis." R.E. Doc. 43 at 65:19-22, 66:4-5. He also referred him to a nearby psychologist. R.E. Doc. 43 at 62:25-63:2. Eight days after having filled and begun his Paxil prescription, Dietz committed suicide by throwing himself in front of a train.

Appellant filed a diversity suit in the Northern District of Georgia on April 24, 2007, alleging that under Georgia law SBC was (1) strictly liable as "a manufacturer of a defective and unreasonably dangerous product, and for marketing defects and misrepresentations, which proximately caused Gary Dietz's injuries and death," (2) "unreasonable, or negligent, and was a proximate cause of Garry Deitz's injuries and death," and (3) "liable under a breach of warranty." R.E. Doc. 1 at ¶¶ 10-12. SBC filed two motions for summary judgment, the first of which raised Georgia's learned intermediary doctrine as an affirmative defense and is at issue in the present opinion.[1]

During discovery, the parties deposed Dietz's physician, Dr. Zuppa. He testified that he considered the potential risks and benefits of prescribing Paxil to Dietz when he wrote the prescription in 2002. R.E. Doc. 75 (*Dietz v. Smithkline*

---

[1] The second motion claimed that Appellant's claims are preempted by federal law. Because the district court did not reach this issue, this Court need not discuss it.

*Beecham Corp.*, No. 4:07-CV-0077 (N.D. Ga. Dec. 9, 2008) (order granting

summary judgment)) at 2.  He also acknowledged that subsequent studies have

pointed to a "slight[ly] increase[d]" risk of suicide among children and adolescents

taking SSRIs, but stated that he still does not usually explain the increased risks to

adult patients whom he considers stable.  R.E. Doc. 75 at 3 (brackets in original).

Moreover, Dr. Zuppa testified that, even in retrospect, he agreed with his decision

to treat Dietz with Paxil and would do so again today under the same

circumstances:

Q. And you testified that you still agree with your decision to prescribe Paxil for

Mr. Dietz, right?

A [Dr. Zuppa]. Yes.

R.E. Doc. 43 Ex. B at 80:15-18; *accord* R.E. Doc. 43 Ex. B at 42:14-23.

> Q. (By Mr. Norden) The current prescribing information for Paxil.  I
> want to give you an opportunity to read exactly what the black box
> says. . . .
> A [Dr. Zuppa]. Okay.
> . . . .
> Q. . . . . Based after having read this [new, updated] 2008 prescribing
> information for Paxil, is there anything in that that makes you believe
> that if you had read that same information in April of 2002 you would
> have decided not to prescribe Paxil for Gary Dietz?
> A. No.
> Q. So sitting here today, . . . knowing Gary Dietz ultimately took his
> own life, do you still consider your decision to prescribe Paxil for him
> on April 3rd, 2002, to be an appropriate decision?

A. I felt the risk of not treating him was worse.  So I would have to make a decision, and I felt like I needed to prescribe him Paxil.

R.E. Doc. 43 Ex. B at 112:4-113:7; *see also* R.E. Doc. 55 Exs. 9, 12 (letters from SBC to doctors informing them of increased risk of suicide for adults under age of 25 taking SSRIs).

## II.  Jurisdiction & Standard of Review

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The court reviews a district court's grant of summary judgment *de novo*.  *Int'l Stamp Art, Inc. v. USPS*, 456 F.3d 1270, 1273 (11th Cir. 2006) (citation omitted). The court will deem summary judgment appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial.  *Int'l Stamp Art, Inc.*, 456 F.3d at 1274.

## III.  The Learned Intermediary Doctrine

In standard products liability cases premised on a failure to warn, Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the

defendant breached that duty, and that the breach proximately caused the plaintiff's injury. *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1362 (N.D. Ga. 1999) (holding that proximate cause is necessary element of plaintiff's case whether proceeding under strict liability or negligence theory). Within the context of prescription drugs, however, Georgia employs the learned intermediary doctrine, which alters the general rule that imposes liability on a manufacturer for failing to warn an end user of the known risks or hazards of its products. *Id.* at 1363. According to the doctrine, the manufacturer of

> a prescription drug [manufacturer] . . . does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer. The rationale for the doctrine is that the treating physician is in a better position to warn the patient than the manufacturer, in that the decision to employ prescription medication . . . involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular need and susceptibilities.

*McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 594 (Ga. 2003) (footnotes & quotation marks omitted); *accord Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1279-81 (11th Cir. 2002) (per curiam); *see Wheat*, 46 F. Supp. 2d at 1363; *Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723, 730 (Ga. Ct. App. 2003). In most cases, a court begins its inquiry under this doctrine by determining whether the manufacturer provided the learned intermediary with an adequate warning. *Wheat*,

6

46 F. Supp. 2d at 1363 (citation omitted). If the warning was adequate, the inquiry ends, and the plaintiff cannot recover. *See Singleton v. Airco, Inc.*, 314 S.E.2d 680, 682 (Ga. Ct. App. 1984). If the warning is inadequate, or merely presumed to be, the plaintiff must demonstrate that the deficient warning proximately caused the alleged injury to prevail. *See Wheat*, 46 F. Supp. 2d at 1363. Therefore, in cases where "a learned intermediary has actual knowledge of the substance of the alleged warning and would have taken the same course of action even with the information the plaintiff contends should have been provided, courts typically conclude that . . . the causal link is broken and the plaintiff cannot recover." *Ellis*, 311 F.3d at 1283 n.8 (quoting *Wheat*, 46 F. Supp. 2d at 1363) (quotation marks omitted).[2]

## IV. Discussion

Appellant cannot demonstrate that SBC's alleged failure to warn Dr. Zuppa about increased suicide risks associated with Paxil proximately caused Dietz to commit suicide. The doctor provided explicit, uncontroverted testimony that, even when provided with the most current research and FDA mandated warnings, he

---

[2] Georgia's long-recognized, unwavering use of the learned intermediary doctrine has cast no "substantial doubt" on the doctrine's continued validity under Georgia law. The court therefore denies Appellant's request to certify to the Georgia Supreme Court the question on whether Georgia law required SBC to warn Dietz directly about the risks associated with taking Paxil. *See Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 508 F.3d 653, 654 n.2 (11th Cir. 2007) (quotation marks omitted).

still would have prescribed Paxil for Dietz's depression. Pursuant to Georgia's learned intermediary doctrine, this assertion severs any potential chain of causation through which Appellant could seek relief, and Appellant's claims thus fail.[3]

## VI. Conclusion

The district court's grant of summary judgment for SBC is affirmed.

**AFFIRMED**

---

[3] At oral argument, Appellant's attorney asked the court to consider whether a stronger warning from SBC would have affected Dr. Zuppa's prescribing practice, not simply whether he would have prescribed Dietz the drug, the assumption being that had Dietz or his family members received the current information on Paxil's side effects, they would have taken actions to prevent his suicide. As a thorough examination of the record reveals no evidence to support this argument, Appellant's claim cannot survive summary judgment. *See Int'l Stamp Art, Inc.*, 456 F.3d at 1274.