[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13240

Non-Argument Calendar

_____

DR. NELAYDA FONTE,
an individual,

                                        Plaintiff-Appellant,

*versus*

LEE MEMORIAL HEALTH SYSTEM,
VENKAT PRASAD,
Dr.,

                                        Defendants-Appellees.

—————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:19-cv-00054-SPC-NPM

—————————————

Before JILL PRYOR, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Dr. Nelayda Fonte alleged that her employer, Lee Memorial Health System, and her supervisor, Dr. Venkat Prasad, fired her in retaliation for exercising her rights under the Family and Medical Leave Act ("FMLA"). Lee Memorial Health System maintained that it fired her because she violated its trauma patient transfer policy after she had already received a final warning. The district court dismissed the suit against Prasad for lack of subject matter jurisdiction and granted Lee Memorial Health System summary judgment, concluding that Fonte did not prove that her FMLA leave, rather than her violation of policy, caused her employer to terminate her. After careful review, we agree and affirm the district court's grant of summary judgment to Lee Memorial Health System and dismissal of Prasad.

## I.    BACKGROUND

We write for the parties and recount only the facts necessary to explain our decision.[1] Fonte worked for Lee Memorial Health System as a trauma surgeon for over 20 years and held several high-level positions, including chief of staff. The state of Florida created Lee Memorial Hospital and Lee Memorial Health System (collectively, "Lee Health") as a public health care system. Lee Health is a trauma facility that routinely receives transfers of trauma patients from other hospitals. Federal and state law require Lee Health to accept all trauma patient transfers that it has the capacity (i.e., available beds) and capability (i.e., a trauma department) to treat. Lee Health had its own internal policy requiring the same.

Fonte was on call the night of March 3, 2018, when a physician from another hospital called and requested to transfer a trauma patient to Lee Memorial Hospital and Fonte's care. She refused the transfer, telling the physician that the surgery was simple enough that he should be able to do it himself, despite his protestations that he could not. Lee Health's risk management department opened an investigation and, after interviewing Fonte, determined that she had violated Lee Health's internal transfer policies.

Lee Health informed the Florida Agency for Health Care Administration ("AHCA"), which began its own investigation into

---

[1] Because we are reviewing the district court's order on a motion for summary judgment, we recount all facts in the light most favorable to Fonte, the non-moving party. *See infra* Part II.

the potential violation of the federal law, the Emergency Medical Treatment and Labor Act ("EMTALA"), that requires trauma facilities to accept transfers. AHCA concluded that Lee Health had been obligated to accept the transfer and that Fonte violated EMTALA when she refused to do so. AHCA worked with Lee Health to prepare an action plan to ensure that the hospital complied with EMTALA in the future. The plan included weekly audits of transfer requests, in-person training for all trauma surgeons, and educational counseling for Fonte. At the training, Lee Health clarified the law and its own internal policy, telling Fonte and the other trauma surgeons that the transferring physician was the one who decided whether the patient should come to Lee Health; the Lee Health physician was required to accept the transfer and the transferring physician's medical judgment that a transfer was warranted.

Fonte faced other consequences stemming from the March call. The internal investigation determined that she had committed gross misconduct: "[c]onduct detrimental to Lee Health['s] image" and "conduct which disturbs a patient." Doc. 38-2 at 23–24.[2] Under Lee Health's Corrective Action Process, "[e]mployment is subject to termination when an employee's conduct . . . has not improved after adequate counseling or when the employee commits an offense of gross misconduct which is so serious that progression through the formal levels of corrective action is not appropriate." *Id.* at 23. Corrective action under this process could take the form

---

[2] "Doc." numbers refer to district court docket entries.

of a Final Warning, available in "limited situations where the nature of an employee's offense may warrant a one-time final warning instead of termination." *Id.* at 22.

In April, Lee Health issued Fonte a Final Warning, her first disciplinary action in her Lee Health career. The Final Warning stated, "Should Dr. Fonte persist in these behaviors by repeating the same or similar offenses her employment will be terminated." *Id.* at 27. When Dr. Venkat Prasad, the hospital's Chief Medical Officer, gave Fonte a written copy of the Final Warning, he told her that she had to accept all transfers into Lee Health's trauma service, even if she disagreed with the transferring physician's medical judgment, or else she would be "immediately terminated." *Id.* at 4–5.

But on November 12, Fonte refused another transfer of a trauma patient. The transferring physician wanted to send the five-year-old patient to Lee Health—the closest trauma facility—to stabilize him before transferring him again to a pediatric facility that was significantly farther away. Fonte told the transferring physician that Lee Health lacked pediatric services and could not treat the child. Fonte persuaded the transferring physician to transfer the child directly to the pediatric facility, even though the other physician was concerned that the child was not stable enough to make it there. Tragically, the child died of his injuries before any transfer took place.

Lee Health learned of Fonte's refusal the next day and began investigating the incident. The risk management department reached out to Fonte on November 15 to schedule an interview.

That evening, Fonte asked a fellow surgeon to recommend "headhunters"—recruiters who find surgeons temporary assignments. Doc. 38-5 at 40, 88. With the risk management meeting looming, she thought that "it would probably be a good idea to know what else is out there." *Id.* at 40. At the investigatory interview on November 16, Fonte told risk management that she was right to refuse the patient transfer because the pediatric facility was the most appropriate facility for the patient.

On November 18, Fonte sought medical care for anxiety that she experienced as high blood pressure, chest pressure, and shortness of breath. She spent the night in the hospital's intensive care unit. She notified Lee Health and requested leave under the FMLA.[3] Lee Health granted her leave, and Fonte's colleagues were supportive of her taking the time off to recover. She sought psychiatric help and was diagnosed with post-traumatic stress disorder, anxiety, and depression related to a sexual assault that she had suffered at medical school.

The investigation continued while she recovered. Lee Health concluded that it had had the capacity and capability to treat the young patient. Thus, Fonte should have accepted the transfer, and her refusal to do so "constituted a clear violation of Lee

---

[3] The record is unclear as to the exact date Fonte requested FMLA leave. Her briefs in the district court said November 18; in her deposition, she said November 20. Like the district court, we use the earlier date because it is more favorable to her case.

Health's policies and a repeat offense of the very conduct addressed by her one-time Final Warning," which had warned her that she would be terminated if she again refused a transfer like she had done in March. Doc. 38-2 at 6. On November 19, Prasad and other administrators held a conference call to discuss the transfer refusal. A month later, they held another call where they discussed terminating Fonte's employment.

In late December, Fonte's personal physician cleared her to return to work in January but stipulated that, for two months, she should work shorter shifts. On January 4, Fonte notified Lee Health and requested the accommodation. An hour later, Lee Health asked her to meet with Prasad the morning she returned to work. At that meeting, Prasad thanked Fonte for her years of service and handed her a letter terminating her employment. The termination letter stated that she was terminated for "no cause" and provided her with 13 weeks of severance pay. Doc. 38-5 at 96.

Fonte filed this suit against Lee Health and Prasad, alleging that they had interfered with her FMLA rights and had terminated her in retaliation for exercising her FMLA rights. The district court dismissed Prasad as a defendant, determining that the suit could not proceed against him because, as a public official, he could not be held individually liable under the FMLA. Lee Health moved for summary judgment, which the district court granted because Fonte failed to argue her interference claim and failed to make out a prima facie case of retaliation. Fonte now appeals.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order granting a motion for summary judgment, viewing the facts and all reasonable inferences drawn therefrom in favor of the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). If the nonmovant's evidence is "not significantly probative," summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine dispute of a material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

We review dismissals for lack of subject matter jurisdiction *de novo*. *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11th Cir. 2013).

## III.    DISCUSSION

20-13240                Opinion of the Court                9

The FMLA allows an eligible employee to take up to 12 work weeks of unpaid leave annually to recover from "a serious health condition that makes the employee unable to perform the functions" of her position. 29 U.S.C. § 2612(a)(1)(D); *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1293 (11th Cir. 2006). The Act creates a private right of action for two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, . . . and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citing 29 U.S.C. § 2615(a)).

Here, we address only Fonte's retaliation claim.[4] She argues that the district court erred in granting Lee Health summary judgment on retaliation. She asserts that the district court should have analyzed her retaliation claim as a mixed-motive claim but instead analyzed it as a single-motive claim. She also argues that the court

---

[4] The district court briefly addressed Fonte's interference claim, even though it concluded that she failed to argue it in her summary judgment briefing. We agree with the district court's assessment that the claim was abandoned at summary judgment. But even if Fonte did not abandon her interference claim before the district court, she has abandoned it on appeal. In her appellate briefing, she makes passing references to her interference claim but fails to set out specific arguments supporting it or explaining how the district court erred. Because these references are "mere background" to her main arguments, she has abandoned her interference claim. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (internal quotation marks omitted).

erroneously dismissed her claim against Prasad in his individual capacity. We address these arguments in turn.

## A.    The Single-Motive Framework Applies.

Fonte contends that the district court erroneously applied a single-motive framework to her retaliation claim instead of a mixed-motive framework. We agree with the district court that the single-motive framework applies for two reasons. First, we have never held that a plaintiff can bring a mixed-motive claim in an FMLA retaliation case. Second, Fonte did not plead, prove, or argue that Lee Health had mixed motives for terminating her. We start by explaining the difference between the mixed-motive and single-motive frameworks and then discuss why the mixed-motive framework does not apply here.

We analyze FMLA retaliation claims based on circumstantial evidence using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII employment discrimination case. *Strickland*, 239 F.3d at 1207. So, we look to Title VII jurisprudence for direction on the appropriate FMLA analysis. There are two different legal theories available to a plaintiff in a Title VII case: the single-motive theory and the mixed-motive theory. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

A plaintiff who asserts a single-motive discrimination claim can survive a motion for summary judgment by showing that illegal bias was the *only* reason for the adverse employment action.

*See* 42 U.S.C. § 2000e-2(a); *see Quigg*, 814 F.3d at 1235. In reviewing single-motive claims, courts often use the *McDonnell Douglas* framework. *See, e.g.*, *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Under the *McDonnell Douglas* burden-shifting framework, "the plaintiff must first create an inference of discrimination through [her] prima facie case." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). "Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action." *Id.* If the employer meets this burden, the plaintiff has the opportunity to show that the employer's reasons were pretextual. *Id.* at 768.

Alternatively, a plaintiff can assert a mixed-motive discrimination claim and survive summary judgment by showing that, although an employer was motivated by more than one reason to take a particular action, a discriminatory reason was "*a* motivating factor" for the defendant's adverse employment action. *Quigg*, 814 F.3d at 1239 (internal quotation marks omitted); *see* 42 U.S.C. § 2000e-2(m). In *Quigg*, we held that the *McDonnell Douglas* framework was "inappropriate for evaluating mixed-motive claims" at summary judgment. *Quigg*, 814 F.3d at 1237. *McDonnell Douglas* requires a plaintiff to prove that the "true reason" for an adverse action was discriminatory "by showing the employer's purported legitimate reasons *never* motivated" its employment decision. *Id.* at 1237–38 (internal quotation marks omitted). Thus, we reasoned that *McDonnell Douglas* was incongruent with

mixed-motive claims, which allege that an employer was motivated by both non-discriminatory and discriminatory reasons. *Id.* at 1238. Though available for Title VII discrimination claims, the mixed-motive framework does not apply to Title VII retaliation claims. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). We have never held that it applies to FMLA retaliation claims and decline to do so today.

Even if the mixed-motive framework were appropriate in the context of an FMLA retaliation claim, Fonte's claim would fail because she did not allege a mixed-motive claim before the district court. She did not plead in her complaint that Lee Health had mixed motives in terminating her. She did use the phrase "motivating factor" in passing in her summary judgment briefing, Doc. 44 at 17, 18, 31, but this mere mention was insufficient. To withstand summary judgment, she needed to submit "evidence sufficient to convince a jury" that she was terminated for both legitimate and illegitimate reasons, with the illegitimate reason being a motivating factor in the termination decision. *See Quigg*, 814 F.3d at 1239 (internal quotation marks omitted). She only alluded to that possibility, stating that "there could have been a number of factors— including the FMLA—that led to her termination." Doc. 44 at 16. But she did not elaborate on these factors or use them to support a legal argument.

Instead, her summary judgment brief almost exclusively argued that Lee Health's given reasons for terminating her were pretextual and illegitimate. Pretext is not relevant to a mixed-motive

claim. *Quigg*, 814 F.3d at 1240. Her focus on pretext comported with the third step of *McDonnell Douglas* and indicated that she was advancing a single-motive claim. We agree with the district court that, under the circumstances of this case, Fonte did not raise a mixed-motive claim. Thus, the district court correctly analyzed her claim under the single-motive *McDonnell Douglas* framework.

On appeal, Fonte argues that the district court should have applied the mixed-motive framework because Lee Health offered a legitimate, non-discriminatory reason for terminating her. Therefore, she needed only to point to "some evidence from which the factfinder may infer that the protected activity played some part in the termination decision." Appellant's Br. at 20. Not so. If this were true, every retaliation claim would become a mixed-motive claim because the employer must always offer a non-retaliatory reason for its adverse actions. A single-motive claim does not become a mixed-motive claim simply because an employer satisfies its burden of proof.

We proceed to apply a single-motive framework to Fonte's retaliation claim.

## B.    Fonte's Retaliation Claim Fails Under the Single-Motive Framework.

Fonte has not made out a prima facie case of retaliation under *McDonnell Douglas*, failing to prove that taking FMLA leave caused Lee Health to terminate her employment. To succeed on her claim, she was required to demonstrate that Lee Health "intentionally discriminated against [her] in the form of an adverse

employment action for having exercised an FMLA right." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (internal quotation marks omitted). Because she presents only circumstantial evidence, we analyze her claim under the *McDonnell Douglas* framework, which first requires the employee to establish a prima facie case by showing that: (1) she engaged in statutorily protected activity, (2) she experienced an adverse employment decision, and (3) the decision was causally related to the protected activity. *Id.* at 1271; *Hurlbert*, 439 F.3d at 1297.

Both parties agree that Fonte satisfies the first two elements of the prima facie case. She engaged in statutorily protected activity by requesting and taking FMLA leave, and she experienced an adverse employment action when Lee Health terminated her employment. The parties dispute whether she satisfied the third element, showing that there was a causal connection between her FMLA leave and her termination, however. We hold that Fonte failed to show a causal connection. Lee Health contemplated terminating her before she requested FMLA leave, so even the closest temporal proximity is insufficient to prove causation.

To establish causation, an employee must show that the decisionmaker was aware of the protected conduct, and that "the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). Generally, "[c]lose temporal proximity between protected conduct and an adverse employment action" is sufficient to show causation. *Hurlbert*,

439 F.3d at 1298. But an exception applies when the employer contemplates taking the adverse employment action before the employee engages in protected activity. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). In that situation, temporal proximity between the adverse action and the protected activity is insufficient to show causation. *Id.*

Fonte argues that the close temporal proximity between her exercising her FMLA rights and her termination is sufficient to establish causation. We disagree. Mere temporal proximity is insufficient to demonstrate causation because the undisputed evidence in this case shows that Lee Health contemplated terminating Fonte before she took FMLA leave. Because Fonte does not offer any additional evidence of causation, we conclude that she failed to make out a prima facie case of FMLA retaliation.

Fonte first refused a transfer from an outside facility in March, several months before she requested leave. Lee Health's investigation determined that "the appropriate discipline for Dr. Fonte's gross misconduct was either a final written warning or termination." Doc. 38-2 at 4. Lee Health decided not to terminate her in March because of her "years of service" and its belief that she "would correct her behavior and not commit a similar violation in the future." *Id.* To this end, it provided her with group training and individual counseling to help her avoid running afoul of its transfer policy a second time. Both Prasad and the Final Warning, issued in April warned her that she would be terminated if she did. Thus, the undisputed evidence shows that Lee Health contemplated

terminating Fonte's employment in March and April, well before she requested FMLA leave in November.

When Fonte refused another transfer in November, she violated the terms of the Final Warning by committing the same gross misconduct she had been counseled to avoid. She was subject to termination then—the Final Warning was a "one-time only lesser discipline." *Id.* at 6. Fonte already knew that Lee Health had come close to firing her because of the March call. When Lee Health scheduled an interview with Fonte to investigate the November call, she texted a friend to ask about potentially finding other employment with "headhunters" because "[she]'d be dumb not to be concerned" about her job. Doc. 38-5 at 40.

Fonte requested FMLA leave on November 18, knowing that she was on thin ice. On November 19, Prasad and other Lee Health administrators held a conference call to discuss the investigation into her transfer refusal. At another conference call in December, the same administrators discussed Fonte's "termination based on her actions while she was on a final warning." Doc. 44-7 at 4. In early January, Fonte returned to work, starting her day with a meeting with Prasad. There, Prasad terminated her employment. Fonte was fired the day after her FMLA leave ended, before she had a chance to resume working.

For causation purposes we measure temporal proximity "from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Gulf Coast*, 854 F.3d at 1272. Measuring the scant hours between the last day of her FMLA leave

and her termination shows us "very close" temporal proximity that, usually, is sufficient on its own to establish causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). But Fonte's case falls under an exception to this rule. Given the undisputed evidence that her termination was under way before she invoked her right to FMLA leave, under our precedent the close temporal proximity between the end of her leave and her termination "does not suffice to show causation." *Drago*, 453 F.3d at 1308. Lee Health contemplated terminating Fonte in March because of her first refusal. It was in the process of investigating her November refusal when she requested FMLA leave. That investigation led to her termination.

In terminating Fonte, Lee Health "proceed[ed] along lines previously contemplated, though not yet definitively determined." *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). Thus, the temporal proximity between her return from leave and her termination is "no evidence whatever of causality." *See id.*; *see also Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) ("[A]nti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint."). Because Lee Health considered terminating her in March—before she engaged in protected activity—even the very close temporal proximity between her FMLA leave and her termination is insufficient to show causation. *See Drago*, 453 F.3d at 1308.

18                    Opinion of the Court                    20-13240

Fonte offered no other evidence that she was terminated because she exercised her FMLA rights. In her deposition, Fonte conceded that no one told her that she was being terminated because of her FMLA leave, or even mentioned the leave in relation to her termination. Rather, according to Fonte, no one at Lee Health said anything negative about her FMLA leave request—not the office manager, not the trauma director, and not Prasad. Nor did anyone try to talk her out of taking FMLA leave. Fonte presented no evidence showing that Lee Health administrators discussed her FMLA leave at either conference call. And she presented no evidence that contradicted Prasad's sworn statement that her FMLA leave "was not a factor in the decision" to terminate her employment. Doc. 38-2 at 6. Instead, the evidence supports Lee Health's contention that it terminated Fonte because she twice violated its internal transfer policy. Fonte has not met her burden of raising a genuine issue of material fact as to whether her taking of FMLA leave and her termination are causally related. *See Gulf Coast*, 854 F.3d at 1271.[5]

---

[5] Fonte also argues that the district court should have evaluated her retaliation claim under the "convincing mosaic" framework set out in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Although we have used this framework in Title VII discrimination cases, *see, e.g.*, *Chapter 7 Trustee v. Gate Gourmet*, 683 F.3d 1249, 1254–56 (11th Cir. 2012), we have not yet applied it in the FMLA retaliation context. Under the convincing-mosaic framework, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the

Because we hold that she has not established a prima facie case of retaliation, we do not proceed to the next steps of the burden-shifting *McDonnell Douglas* framework. We affirm the judgment in favor of Lee Health.

### C.    The Suit Against Prasad Was Properly Dismissed.

Fonte argues that the district court erred when it dismissed her suit against Prasad in his individual capacity as her employer. She acknowledges that dismissal is the result required under our precedent in *Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999), but urges us to overrule that case. As a panel we cannot do so.

Lee Health, organized under Florida state law, is a public agency; Prasad, an executive in charge of the public agency, is a public official. The parties agree on those facts. They also agree that *Wascura* applies here. In *Wascura*, we applied our reasoning from a Fair Labor Standards Act case to the FMLA context and held that "a public official sued in his individual capacity is not an 'employer' subject to individual liability" under the FMLA. *Wascura*, 169 F.3d at 686. Fonte cites our sister circuits' decisions that reach the opposite result, but our prior panel precedent rule prevents us from

---

decisionmaker." *Smith*, 644 F.3d at 1328 (footnote and internal quotation marks omitted). An inference of discriminatory intent—in this context, retaliatory intent—includes an inference of causation. Because Fonte has failed to raise an inference of causation, she could not present a convincing mosaic of circumstantial evidence, even if this path were open to her.

overruling *Wascura*. *United States v. Steele*, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc). "We are bound to follow a prior panel or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision." *Chambers v. Thompson*, 150 F.3d 1324, 1326 (11th Cir. 1998). Fonte's claim against Prasad was squarely within *Wascura*'s holding; thus, we conclude that the district court properly dismissed him as a defendant for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, we affirm.

**AFFIRMED.**