[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11064

Non-Argument Calendar

_____

DELIA BELL,
Ex Rel,

Plaintiff-Appellant
Cross-Appellee,

*versus*

KARL E. CROSS,
CROSS GARDEN CARE CENTER, LLC,
a.k.a. Golden 190, LLC,

Defendants-Appellees
Cross-Appellants,

2                    Opinion of the Court                    21-11064

TABITHA CROSS, et al.,

Defendants.

————————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:16-cv-00961-JDW-AEP

————————————————

Before WILSON, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

        This is a False Claims Act (FCA) case.  Delia Bell, a registered nurse, alleges that her former employer—a skilled nursing facility (SNF) called Cross Garden Care Center (CGCC)—and its owner Karl Cross (together, the Defendants) submitted false claims for reimbursement to the Centers for Medicare and Medicaid Services (CMS).  The district court granted the Defendants' motion for summary judgment.  Bell argues on appeal that the district court erred by allocating the burden of proof to her, rather than to the Defendants.  On a conditional cross-appeal, the Defendants argue that the affidavit Bell attached to her motion for summary judgment was a sham and should have been stricken.  We need not reach the Defendants' conditional cross-appeal because the district court

correctly found that the Defendants are entitled to summary judgment, even when considering Bell's affidavit.

## I.

We begin with some background on Medicare reimbursement at SNFs.  Medicare is a federal program that funds health insurance for eligible elderly and disabled people.  *See* 42 U.S.C. §§ 1395 *et seq.*  The program will cover at least some of the cost of an eligible patient's first 100 days at an SNF.  SNFs can seek reimbursement for the services they provide through a per diem payment system.  42 U.S.C. § 1395yy; 42 C.F.R. § 413.335.

The per diem rate at which Medicare reimburses SNFs is related to the patient's Resource Utilization Group (RUG) score, which quantifies the patient's need for therapy.  *See Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1095 (11th Cir. 2020).  A higher RUG score equates to higher Medicare reimbursement.  RUG scores are derived from periodic assessments conducted by SNFs to evaluate patients' residual functional capacity.  *Id.* at 1094  (citing 42 U.S.C. § 1395i-3(b)(3)(C)).  SNFs must submit these assessments, which are called Minimum Data Sets (MDS), in order to receive Medicare reimbursement.  *Id.*

## II.

Bell worked as a nursing home administrator at CGCC from November 2014 until she resigned in August 2015.  In April 2016, Bell sued CGCC under the FCA.  The FCA enables private citizens, known as qui tam relators, to sue on behalf of the United States

government.  31 U.S.C. § 3730(b).  "To establish a cause of action under the [FCA], a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *United States v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005) (citing 31 U.S.C. § 3729(a)).

Bell alleged, in part, that the Defendants violated § 3729(a)(1)(A) by providing unnecessary therapy services, artificially inflating RUG scores, improperly refusing to discharge  patients during their first 100 days at the facility, and improperly re-admitting patients to reset the 100-day period during which Medicare would reimburse for therapy services.[1]  According to Bell, the Defendants then submitted false claims for reimbursement to the government.

The Defendants deposed Bell in September 2020.  She testified at the deposition that she is not a licensed therapist and, therefore, cannot order therapy or prescribe medications.  During her time at CGCC, Bell was not involved in billing or the creation of MDS reports.  In fact, she never saw a bill or an MDS report.  Bell also had difficulty recalling any patients whose RUG scores had been manipulated.  She recalled generally that Cross sent her emails inquiring why patients' RUG scores were not higher, but

---

[1] Bell also alleged violations of § 3729(a)(1)(B) and Fla. Stat. § 68.082(2)(a), but those counts were previously dismissed and are not before us on appeal.

she was unsure whether any RUG scores were changed as a result. She later discussed one patient who she believed underwent unnecessary therapy sessions, though she admitted that a therapy company had concluded that the patient needed the therapy.

Following the deposition, Bell filed a motion for partial summary judgment. She attached to that motion her own declaration stating that she had refreshed her recollection as to the treatment of seven patients. In her declaration, Bell claimed that CGCC over-treated these patients and sought reimbursement from the government, despite the fact that these patients required little or no therapy. Bell also stated that Cross directed her to increase one patient's RUG score without offering any justification. According to Bell, she raised concerns to a manager at CGCC, but the manager responded that "this is just how Cross operates."

The Defendants opposed Bell's motion for summary judgment and filed their own motion for summary judgment. They also moved to strike Bell's declaration because it contradicted her deposition testimony and contained inadmissible testimony. The district court denied Bell's motion, granted the Defendants' motion for summary judgment, and denied the Defendants' motion to strike Bell's declaration as moot. In its order, the district court held that the Defendants had established that there was no genuine issue of material fact as to the FCA claim, and that Bell had "failed to rebut [that] showing."

### III.

We review de novo a district court's grant of summary judgment. *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014) (per curiam). We view all facts and make all reasonable inferences in the light most favorable to the nonmovant. *Id.*

### IV.

Bell's argument on appeal is that the district court "failed to hold [CGCC] to their burden of proof on summary judgment." She argues that the district court improperly shifted the burden of proof to the non-movant.

After careful review, we find that the district court did not improperly shift the burden of proof. The district court accurately cited our precedents for the proposition that the moving party (in this case, the Defendants) bears the *initial* burden of showing that there are no genuine disputes of material fact, but "[o]nce the movant adequately supports its motion, the burden shifts to the non-moving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010).

Applying this standard, the district court found that there was no genuine issue of material fact as to (1) whether the Defendants submitted false claims; and (2) the Defendants' scienter. We agree with the district court on the first basis and therefore we need not reach the second.

The district court correctly found that Bell "failed to rebut Defendants' showing of the absence of a genuine issue of material fact" as to whether the Defendants submitted a false claim. Bell attempts to establish a false statement by focusing on the Defendants' determination that certain patients needed therapy when such therapy was unnecessary. But in order for a clinical judgment to be "false" in the context of the FCA, it must be *objectively* false, meaning that it "contains a flaw that can be demonstrated through verifiable facts." *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1297 (11th Cir. 2019) ("[A] reasonable difference of opinion among physicians reviewing medical documentation *ex post* is not sufficient on its own to suggest that those judgments—or any claims based on them—are false under the FCA."). "Objective falsehood can be shown in a variety of ways," including through expert testimony. *Id.*

Here, Bell failed to create a genuine issue of material fact as to whether the Defendants' treatment of patients—and thus their claims for reimbursement pursuant to that treatment—were based on objective falsities. *See id.* Bell acknowledged that she is not a licensed therapist or medical doctor, and that she cannot order therapy or write prescriptions for patients. She did not offer any testimony in support of her position from a professional who *is* qualified to do so. And her own testimony that treatments were "unnecessary," which differed from that of the professionals who authorized the therapy at CGCC, does no more than establish a difference of opinion. As our decision in *AseraCare* explains, such

a difference of opinion falls short of establishing objective falsity. *See id.*

Bell also stated in her deposition that Cross inquired about raising RUG scores via email, and she stated in her declaration that Cross instructed her to raise one patient's RUG score without offering a reason for the change. However, Bell fails to offer sufficient evidence to establish who these patients are, that these patients' RUG scores should not have been altered, and that Cross submitted an objectively false claim on behalf of these patients.

Also problematic for Bell, she never saw the billing statements that CGCC submitted for reimbursement for the seven patients she identifies. We have emphasized the importance of medical and billing content in cases where relators allege false claims based on the provision of unnecessary medical services. *See United States ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1303 (11th Cir. 2002). Bell argues that a spreadsheet provided by the government offers sufficient detail of patients' billing history and CGCC's submissions to Medicare. But as the district court found, the spreadsheet does not identify the patients in Bell's declaration. Nor has Bell used the information in the spreadsheet to marshal any cogent argument as to how it creates an issue of fact regarding CGCC's submission of a false claim. We agree with the district court, then, that even considering Bell's declaration, there is no evidence in the record creating a genuine issue of material fact as to whether the Defendants submitted false claims.

Because we find no error in the district court's allocation of the burden of proof or in its finding that Bell failed to create a genuine issue of material fact on the submission of false claims, we affirm the district court's grant of summary judgment.

**AFFIRMED.**